BRAZEAU, Respondent, vs. McBRIDE, Appellant.

*February 10—March 2, 1915.*

*Principal and agent: When agent's knowledge imputed to principal: Vendor and purchaser of land: Assumption of mortgages: Liability on unsecured notes: Money had and received: Assignment of cause of action: Appeal: Discretion: Directing judgment.*

1. The fact that after B. and M. had exchanged lands M., although under no obligation to do so, paid one half of the commission of a broker employed by B., did not render the broker M.'s agent so as to charge M. with knowledge of facts relative to the transac-

tion which were known to the broker but had not been communicated to M.

2. One dealing with the agent of another person cannot enter into an agreement with such agent by which knowledge of certain facts is to be withheld from the principal, and then hold the principal chargeable with knowledge of such facts on the ground that the agent knew them.

3. A purchaser of land who, by the terms of the deed, assumed and agreed to pay two mortgages thereon, one for $2,500 and one for $1,000, when in fact the second mortgage was for $550 only, did not, even though he knew such fact, thereby agree to pay certain unsecured notes of the vendor for $450, of which he had no knowledge and upon which, including accrued interest, more than $450 was due.

4. In such case, however, it having been in fact intended by both parties that, as part of the consideration for the land, the purchaser should pay indebtedness of the vendor to the amount of $3,500, he still equitably owed $450, for which the vendor might maintain an action as for money had and received; and if the vendor assigned such cause of action to the holder of the unsecured notes the latter might recover said amount thereon against the purchaser.

5. No assignment of such cause of action having been made, and the holder of the unsecured notes having brought action thereon against the purchaser of the land, the latter was within his rights in defending and a judgment against him was erroneous; but upon reversal of such judgment, there being no dispute as to the essential facts, under the authority of sec. 2405m, Stats., the plaintiff is permitted, upon filing in the court below an assignment to him of the vendor's cause of action for the $450, to have judgment for that amount, with interest from the date of the conveyance of the land, less the defendant's costs upon the appeal and in the court below.

APPEAL from a judgment of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge. *Reversed.*

On or about September 9, 1913, one Fred Bruhn and his wife, Gertrude, were the owners and in possession of a certain farm in Oconto county which was heavily incumbered and which they desired to sell or trade for other property. They employed one Paul Muehrke to dispose of the farm and agreed to pay him a commission of $100. Muehrke knew one *Henry McBride,* who resided in the city of Marinette and who owned

some city property which he was willing to trade for farm property. The outstanding mortgage against the Bruhn farm amounted in fact to $3,050. There was a mortgage of $500 against the Marinette property owned by *McBride*. The negotiations were carried on principally between Muehrke and *McBride*. It was represented to *McBride* that the outstanding mortgages against the farm amounted to $3,500, and it was agreed between the parties that *McBride* should assume and pay the mortgages against the farm and convey to Bruhn his city property subject to the $500 mortgage thereon, which Bruhn assumed and agreed to pay. The deed from Bruhn to *McBride* covenanted that the land conveyed .was "free and clear from all incumbrances whatever, except one mortgage of $2,500 and one mortgage of $1,000, which the party of the .second part [*McBride*] assumes and agrees to pay." *McBride* testified that he did not examine the records, but relied on what Bruhn and Muehrke told him, and supposed that there were two mortgages against the farm for the amount stated in the deed until after the transaction had been completed.

Bruhn testified that he knew all the time that the mortgages against the farm amounted to only $3,050, but that he owed one Pipp, a relative of his wife, $450 which was evidenced by two notes, one for $300 and one for $150, the $300 note having been used in whole or in part in the purchase price of the farm; that he told Muehrke that these notes must be taken care of and assumed by *McBride;* that thereupon Muehrke advised him to say nothing to *McBride* about the existence of the notes, but simply put a provision in the deed obligating *McBride* to pay mortgages to the amount of $3,500, and that, relying on this advice from the agent, Muehrke, he consented to have the deed drawn as it was. As soon as the deeds were exchanged Muehrke discovered that the mortgages amounted to only $3,050, if he did not know that fact before, and he advised Bruhn to give a mortgage at once to whoever he desired

to secure for the $450 and put it on record before the deed to *McBride* was recorded, so that *McBride* would be obliged to pay it. Muehrke drew such a mortgage, forwarded it to Bruhn, who had gone to Milwaukee, and it was executed and returned, but in the meantime *McBride* had recorded his deed, so this mortgage was not placed on record.

After the transaction was completed Bruhn and Muehrke insisted that *McBride* ought to pay half of the commission which Bruhn had agreed to pay, but which he was unable to pay at that time. *McBride* consented and paid Muehrke $50 commission. One of the outstanding mortgages against the farm purchased by the defendant was for $2,500 and the other was for $550. The plaintiff in this action purchased the note for $550 which one of the mortgages was given to secure, and also procured an assignment from Pipp of the two notes aggregating $450, and brought an action at law against the defendant *McBride* on all three of the notes. After suit was brought the $550 note was paid, and the defendant denied liability on account of the Pipp notes.

The plaintiff in this action was the notary before whom the deed from the Bruhns to *McBride* was acknowledged. He testified on the trial that before the execution and delivery of the deeds he stated that the mortgage against the Bruhn farm amounted to only $3,050, and that *McBride* said "We know all about this." The transaction was then completed. Muehrke testified that plaintiff said to Bruhn: "I did not know you had a thousand dollar second mortgage on your place," and that Bruhn replied "Yes, I have." *McBride's* testimony corroborates that of Muehrke in this respect.

Two questions were submitted to the jury:

"(1) Was the defendant, *Henry McBride,* informed by *L. W. Brazeau,* at the time the deed was acknowledged, that the second mortgage on the Bruhn property was $550? *A.* Yes.

"(2) Did the defendant, *Henry McBride,* at the time of

the verbal contract which resulted in the execution and delivery of the warranty deed from Fred Bruhn to the defendant, promise and agree to pay the two unsecured Bruhn notes of $300 and $150 respectively, set out in the plaintiff's complaint? A. Yes."

Judgment was rendered on this verdict against the defendant for $450 and accrued interest and costs, from which judgment defendant appeals.

For the appellant there were briefs by *John H. Franzke,* attorney, and *L. M. Nelson,* of counsel, and oral argument by *Mr. Nelson.*

For the respondent the cause was submitted on the brief of *Classon & O'Kelliher.*

BARNES, J.     There is no claim on the part of any witness that at the time the transfers took place the defendant had any actual knowledge that the Pipp notes were in existence, or that he made any promise to pay these particular notes.     The court must have permitted the answer of the jury to the second question in the special verdict to stand on the theory that Muehrke was *McBride's* agent, and that, Muehrke having been informed that it was Bruhn's intention to have the mortgages aggregating $3,050 and the Pipp notes aggregating $450 paid, his knowledge was the knowledge of his principal and the obligation assumed by defendant was in reality to pay the two outstanding mortgages and the Pipp notes.

We think this conclusion is untenable for two reasons.     In the first place the evidence shows that Muehrke was Bruhn's agent, and we find nothing in the evidence to indicate that Muehrke represented *McBride,* except the fact that after the transaction was concluded *McBride* paid one half of Muehrke's commission although under no obligation to do so.     At best Muehrke was no more than a broker or go-between, and the knowledge referred to could hardly be charged to *McBride* so long as it was not communicated to him.

In the next place, we reach the same result if we consider Muehrke to be the agent of *McBride* and not of Bruhn. The latter knew that the information was not to be communicated to *McBride*. On the contrary it was intended to be suppressed. Bruhn says the reason why he drew the deed as it was drawn was because Muehrke had cautioned him that nothing must be said to *McBride* about the Pipp notes. It is not the law that one dealing with the agent of another can enter into an agreement with the agent by which certain facts are to be suppressed from the principal and then say that the principal is chargeable with knowledge of these facts anyhow because his agent knew them.

By no fair construction of the language quoted from the deed can it be said to contain an agreement to pay the Pipp notes. Instead, we find a specific provision that one mortgage for $2,500 and another for $1,000 are assumed and agreed to be paid. We can see no theory on which suit could be maintained on these unsecured Pipp notes against *McBride* except on a promise to pay them, and we are unable to find any promise. We do not see how the answer to the first question in the verdict affects the question. If defendant knew that the second mortgage was for $550 instead of $1,000, as an honest man he should know that he would owe Bruhn $450 after the mortgages were paid. But this knowledge could not make a contract whereby defendant agreed to pay notes he never heard of and notes on which more than $450 was due.

It is very certain that as part of the consideration for the farm the defendant expected and agreed to pay indebtedness of Bruhn to the amount of $3,500 and Bruhn expected that indebtedness of his to this amount would in fact be paid. The form of the indebtedness assumed could not be very material. When *McBride* paid the mortgages aggregating $3,050 he paid only a part of the consideration which it was in fact intended by himself and Bruhn that he should pay. In equity and good conscience defendant owes Bruhn $450, for

which Bruhn can maintain an action as for money had and received. Had Bruhn assigned his cause of action to the plaintiff the case would present no difficulty. But we do not see how any particular creditor of Bruhn could sue defendant for $450 without showing a contract on his part to pay the debt. The fatal weakness in plaintiff's case is that it fails to show such an agreement on defendant's part or else an assignment to the plaintiff of Bruhn's cause of action against the defendant.

Bruhn testified on the trial that it was his intention that the Pipp notes should be paid by defendant. So we have this situation: Defendant owes Bruhn $450; Bruhn owes the plaintiff, who is assignee of the Pipp notes, the amount thereof, and Bruhn and the plaintiff both desire that defendant shall pay the money due from him to the plaintiff. There is no need of any further litigation to settle the controversy, because there is no controversy left. Defendant was well within his rights in refusing to pay the Pipp notes. Had he done so, he might subject himself to a suit by Bruhn to recover the $450. Besides, more than three years' interest had accrued on them when the trade was made with Bruhn. Bruhn's right against the defendant is limited to a recovery of $450 with interest from September 9, 1913, the time when the trade was made. The judgment which was entered on July 18, 1914, included interest to the amount of $95.32. The interest on the Bruhn cause of action to this date would amount to only $23.18. We cannot say that there was an equitable assignment of the Bruhn cause of action to the plaintiff and that Bruhn has estopped himself from asserting the contrary and permit judgment to stand, because the recovery would be too large and because the defendant was strictly within his rights in defending against the causes of action brought against him on the Pipp notes, and being entitled to prevail he should not be mulcted in costs, and because, Bruhn not being a party to this action, the judgment rendered therein would not be binding on him. We see no

reason, however, why litigation over this transaction should be further prolonged. The case has been fully tried and there is practically no dispute about the essential facts which determine the rights of the parties, and there is no reason why substantial justice may not be meted out to every one by making a final disposition of the case. Sec. 2405m, Stats., authorizes such procedure.

The judgment appealed from must be reversed. The defendant is entitled to his taxable costs in this court and in the circuit court. If within thirty days from the date of filing the *remittitur* in the circuit court the plaintiff shall file with the clerk of said court an assignment to him of the Bruhn cause of action against the defendant in due form of law, the plaintiff is permitted to take judgment against the defendant for the sum of $450 with interest at six per cent. from September 9, 1913, less the costs taxed in defendant's favor in this court and in the circuit court. Notice of application for such judgment must be given to defendant's attorneys and an opportunity given them to object to the sufficiency of the assignment. If the plaintiff fails to file the assignment as herein provided for, then on proper proof to that effect judgment must be entered dismissing the complaint with costs.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings as indicated in the opinion.